May 5, 1978

## 78-22 MEMORANDUM OPINION FOR THE ASSISTANT TO THE PRESIDENT FOR DOMESTIC AFFAIRS AND POLICY

### Constitutional Law—First Amendment— Flexibility in Federal Employee Work Schedules—Religious Observance

This responds to your inquiry concerning the constitutionality of H. R. 12040. The question is whether the bill would violate the Establishment Clause of the First Amendment. With the several important caveats discussed below, and with the few revisions which we have recommended, we think that the bill would probably not be held unconstitutional.

H. R. 12040, one of several similar bills, instructs the Civil Service Commission to promulgate regulations allowing Federal employees to take time off to participate in religious observances. The employee must make up the time used by working an equal number of hours of overtime. The bill also contemplates that agencies may grant exceptions from the time-off requirement where "necessary to efficiently carry out the mission of the agency." Because the bill has been recently introduced, there is no meaningful legislative history as yet, nor is it likely that any substantial history will be forthcoming. Therefore, in evaluating whether the bill is constitutionally sound, we have found it necessary to rely on representations made by the sponsor as to its purpose and scope.

Legislation touching upon matters of religion raises difficult questions under the First Amendment: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." The Supreme Court, especially within the past decade, has been confronted with a variety of cases in which it has been called upon to give content to these clauses. As a result, their general contours are now rather firmly settled. Laws challenged as violative of the Establishment Clause must satisfy a three-part test: (1) there must be a "clearly secular legislative purpose"; (2) there must be "a primary effect that neither advances nor inhibits religion"; and (3) the enactment must "avoid excessive government entanglement with religion." *See, e.g., Committee for Public Education & Religious Liberty* v. *Nyquist,* 413 U.S. 756, 773 (1973).

Although, as the Court often noted, the line between the constitutional considerations underlying the Establishment Clause and the purposes of the Free Exercise Clause is not always easy to identify, their central theme is that Government must maintain a relationship of ''neutrality'' both toward particular religious sects and toward religion generally. *See, e.g., Gillette* v. *United States*, 401 U.S. 437, 449 (1971). In other words, the Government may neither promote religion nor discriminate against it.

Although the general outlines are now settled, the legal questions have not become easier to resolve, and what the Court may hold concerning a particular legislative proposal is not fully predictable. The principles are understood, but their application—given the variety of situations in which these questions arise—remains uncertain.

Before turning to a consideration of the application of those general principles to H. R. 12040, it is useful to review briefly a line of recent cases interpreting the provisions of Title VII of the 1964 Civil Rights Act, which mandates nondiscrimination by public and private employers on religious grounds. 42 U.S.C. §§ 2000e—2(a)(1), 2000e(j). These provisions instruct employers to make reasonable efforts to accommodate the religious needs of their employees. On three separate occasions in recent years private employers challenging such provisions under Establishment Clause grounds have had their cases before the Supreme Court. On the first two occasions the lower court decisions were affirmed without opinion by an equally divided Court. *See,* Dewey v. *Reynolds Metals Co.*, 429 F. (2d) 324 (6th Cir. 1970), *aff'd*, 402 U.S. 689 (1971); *Parker Seal Co.* v. *Cummins*, 516 F. (2d) 544 (6th Cir. 1975), *aff'd*, 429 U.S. 65 (1976). This was followed last term by a third case in which the constitutional issue was once again presented: the Court, over the dissents of Justices Marshall and Brennan, decided the case on nonconstitutional grounds thereby avoiding again First Amendment complexities. *Trans World Airlines, Inc.* v. *Hardison*, 432 U.S. 63 (1977).

In each of the above cases the Solicitor General submitted an *amicus* brief defending the constitutionality of the relevant title VII provisions. His argument supports the constitutionality of H. R. 12040, assuming it can be read in the same manner as we read the similar language in title VII.

As stated above, in addressing the three-part Establishment Clause analysis, we have found it necessary to rely on representations made by the bill's sponsor. The first representation is that the language of the bill as it will be introduced on the House floor will carry important modifications. We understand that the critical provision of the bill will read as follows:

> Not later than thirty days after the date of the enactment of this section, the Civil Service Commission shall prescribe regulations providing for work schedules under which an employee whose *personal religious beliefs require the abstention from work during certain periods of time, may elect to engage in overtime work for time lost in meeting such obligations.* . . . [Emphasis added.]

The underlined language stresses that the bill is not intended to favor any particular religious sects or denominations but is aimed at accommodating

strongly held personal convictions even though they may not rest on the dogma of any organized religion or faith. Its focus is placed properly on the individual's personal evaluation rather than upon the dictates of any theistic body.

It was precisely this focus that became the basis on which the Supreme Court upheld the constitutionality—or found it unnecessary to question the constitutionality—of the conscientious-objector laws. *See, United States* v. *Seeger*, 380 U.S. 163 (1965); *Welsh* v. *United States*, 398 U.S. 333 (1970); *Gillette* v. *United States*, 401 U.S. 437 (1971). We also think that it was in large measure the breadth and neutrality of the similar provisions of title VII which allowed the Sixth Circuit to conclude that they were constitutionally sound, *Cummins* v. *Parker Seal Co.*, 516 F. (2d), at 553, 557, and which assisted the Supreme Court in avoiding the constitutional issue last term in *Hardison, supra*, at 81.

Our comments about the precise language of the bill must be read in conjunction with two other representations which we understand have been made. First, we understand that the sponsor of the bill does not regard as one of its purposes granting any form of ''preference'' to religion or to religious institutions. Second, we understand that the bill is premised upon considerations which the Court has heretofore regarded as neutral and secular, including a desire to promote the good will and *esprit de corps* that flow from governmental policies which accommodate and are sensitive to the personal concerns of Government employees. A governmental policy recognizing the ''principle of supremacy of conscience,'' as this one does, would probably be held to have an adequate nonsectarian foundation. *Gillette* v. *United States*, 401 U.S., at 453. It will be helpful in eventual judicial review of the bill to have an expression on the record of these underlying sentiments.

A further word is necessary with respect to the first representation eschewing the notion that the bill is designed to fulfill some affirmative duty, thought by some to arise from the Free Exercise Clause, requiring the Government to ''prefer'' or promote religion. We believe that there is no basis for disagreeing with the statement in the dissenting opinion of Judge Celebreeze in one of the title VII cases that *if* the purpose of a law is to provide ''impartial governmental assistance to all religions,'' it must surely be an unconstitutional intrusion on the separation of church and state. *Cummins* v. *Parker Seal Co.*, 516 F. (2d), at 557. *See also, McCollum* v. *Bd. of Education*, 333 U.S. 203, 211-12 (1948); *Zorach* v. *Clauson*, 343 U.S. 306, 315 (1952); *Gillette* v. *United States*, 401 U.S., at 450. No such contention will be proffered in support of this bill. Instead it will be viewed as a means of accommodating important interests in a neutral and nondiscriminatory manner.

Finally, we understand that supporters of H. R. 12040 have considered the question of appropriate implementation of the Civil Service Commission. To avoid an excessive entanglement, it is anticipated that the Commission will not place itself in the posture of reviewing and scrutinizing such questions as whether the employee's religious beliefs do, in fact, require absence from work. It will not be asked to examine the theology of any religious sect or

94

institution. Rather, its focus, as in the conscientious-objector cases, will be on the reliability of the employee's assertions. *See, e.g., United States* v. *Seeger*, 380 U.S., at 185. There should, then, be no need for the sort of "discriminating and complicated . . . basis of classification" that would raise serious questions about the extent of governmental entanglement with religion.[1] *See, Walz* v. *Tax Commission of the City of New York*, 397 U.S. 664, 698-99 (1970) (Harlan, J.); *Gillette* v. *United States*, 401 U.S., at 457.

With these several representations in mind, and with the language changes we have discussed, we believe that a case can be made for the constitutionality of the bill under the Establishment Clause. It is supported by valid, secular purposes; its primary effects are not to aid religion, and any such benefits can fairly be characterized as "incidental" (*see, Cummins* v. *Parker Seal Co.*, 516 F. (2d), at 553; *Committee for Public Education* v. *Nyquist*, 413 U.S., at 771-72); and in its operation it will not require the sort of continuing and detailed scrutiny that would impermissibly entangle church and state.

We may add that we have discussed our views with the General Counsel of the Civil Service Commission and he has asked that we advise you that he concurs.

LARRY A. HAMMOND
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[1] Whether a statute so broadly conceived, and so susceptible to claims of abuse, is desirable as a matter of policy is a question we do not address. We have not considered the question of desirability of this bill in regards to either title VII as presently constituted or as it might be amended to accommodate further the religious needs of governmental employees.